# Wilkesbarre City Hospital *versus* County of Luzerne.

|       |     |
| ----- | --- |
| 84    | 55  |
| 19 SC | 556 |

The Act of 21st May 1874, enabling a private incorporated hospital to make requisitions upon a county for the payment of its charges, for the support of patients under its treatment, even though they be paupers, is an appropriation of money by the county to the corporation, and is prohibited by sect. 7, art. 9, of the constitution.

March 5th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Common Pleas of *Luzerne county*: Of January Term 1877, No. 159.

This was a case stated, the terms of which, as set forth in the opinion of the court below, were substantially as follows:—

" The Wilkesbarre City Hospital is a charitable institution,

[Wilkesbarre City Hospital *v.* County of Luzerne.]

organized and incorporated for the reception and treatment of sick and injured citizens of Pennsylvania, without regard to creed, sex, or race.    It is without endowment fund, or other means of support than voluntary contributions and the pay received from such patients under treatment as possess the means of payment.    It is located in the centre of one of the large coal fields of Pennsylvania, in a city of not less than twenty thousand inhabitants, and many of the patients are persons suffering from accidents incident to mining—persons whose skill and labor have added largely to the taxable wealth and resources of the county.    The institution has been humanely, judiciously and economically managed, and through its ministrations to the sick and suffering, and to the wants of the destitute, has doubtless relieved the county and the adjoining poor districts of liabilities which they would otherwise have incurred.    The hospital is not owned or controlled by any religious sect or denomination, and the land appurtenant to it is owned by the corporation in fee simple, and is free from encumbrance.

" On the 21st of  May 1874, at the first session after the adoption of the new constitution, the legislature passed an act to provide for the support, out of the county treasury, of the sick and injured poor, when under treatment in hospitals in certain cities and boroughs : Pamph. L. 220, Purd. Dig. 1882, § 1, &c.    The 1st section provides that ' it shall be lawful for the managers or trustees of any hospital for the cure of the sick and injured, which is now or may hereafter be established and duly incorporated, in any city or borough of this Commonwealth, containing a population of not less than twenty thousand inhabitants, to make requisition, quarterly, upon the commissioners of the county in which such hospital may be situated, for the support of such poor patients under treatment in such hospital, as are unable to pay for their treatment ; for which requisitions the said commissioners shall grant orders upon the treasurer of the county, who shall pay the same to the treasurer of such hospital.' The second section limits the amount to be allowed for the treatment of a patient to a sum not exceeding $1 per day, and provides that no greater sum than $5000 shall be paid out of the county treasury to any such hospital in one year.

" On the 17th day of July 1876, in accordance with the provisions of this Act of Assembly, the managers of the hospital made a requisition upon the commissioners of Luzerne county, for the payment of $1205 for the support of certain poor patients in the hospital, who are and were unable to pay for their treatment ; this sum being for the quarter ending July 1st 1876, and being at a rate not exceeding $1 per day for each of said poor patients so supported.

" The commissioners refused to grant an order upon the treasurer, and claimed that the foregoing act is in violation of the seventh section of the ninth article, and also of the twentieth section of the third article of the constitution of Pennsylvania, and therefore powerless

[Wilkesbarre City Hospital v. County of Luzerne.]

to create an obligation upon the county, or to authorize interference with its funds.

The constitutionality of the act is the question raised in the case stated.

Upon this question the court said :—

" The seventh section of the ninth article of the constitution declares that ' the General Assembly shall not authorize any county, city, borough, township or incorporated district to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual.' The legislature is thus explicitly denied the power to authorize a county to appropriate money for any corporation or institution. The act in question authorizes the managers of the hospital, a corporation, to make requisitions upon the commissioners of the county, 'for which requisitions the commissioners shall grant orders upon the treasurer of the county, who shall pay the same to the managers of such hospital.' The county is by this act authorized and directed to appropriate money for a corporation ; but the constitution says the legislature shall not authorize such appropriation. The object of the constitutional provision is to prevent the money of the taxpayer from being given to a corporation or institution ; but the Act of Assembly directs its appropriation to this prohibited object. The conflict between the act and the constitution is clear and obvious ; it is so plain and palpable as to leave no doubt or hesitation in our minds : Sharpless v. Mayor of Philadelphia, 9 Harris 164 ; Speer v. School Directors, &c., of Blairsville, 14 Wright 150.

" In the case of the Northern Home for Friendless Children, reported in 2 Weekly Notes 349, the first and second sections of the Act of April 12th 1875, Pamph. L. 46, authorizing and regulating the making of local appropriations to the schools known as homes for friendless children, were examined. By that act, upon petition setting forth certain matters relative to the number of children cared for, the expenditures, condition and wants of the school, it is made the duty of the Court of Common Pleas, after full investigation, to order and direct the commissioners of the county or city in which the school is situated, to pay to the treasurer of such school, out of the county funds, such sum of money and in such instalments, as the court shall deem just and necessary. The commissioners were thereupon required to draw their warrant upon the county or city treasurer for the payment of such appropriation. Judge Biddle declared this act unconstitutional, as being in conflict with the seventh section, article ninth, of the constitution.

" It is a serious question whether the twentieth section of the third article does not also prohibit this legislative interference by a private corporation with municipal functions, and the appropriation to a private association of municipal moneys.

"Upon consideration, we are of opinion that the said Act of

[Wilkesbarre City Hospital *v.* County of Luzerne.]

Assembly of May 21st, 1874, Pamph. L. 220, is unconstitutional, and pursuant to the terms of the case stated, we direct that judgment be entered in favor of the defendant."

The plaintiff (the hospital) took this writ and the errors assigned were :—

1. Because the learned judge erred in deciding that judgment should be entered in favor of the defendant.

2. Because the judgment is erroneous.

*George R. Bedford* and *E. P. & J. Vaughan Darling,* for plaintiff in error.—Nothing can be conceived more foreign to the purpose held in view by the section of the constitution referred to, than that its provisions should be held to prohibit the payment by counties, boroughs, &c., of debts actually incurred for legitimate purposes, by the public authorities, within their respective limits. A similar construction of the sixth section of the same article of the constitution would most effectually prevent any loan by the Commonwealth even for the purpose of paying its own debts. "The credit of the Commonwealth shall not be pledged or loaned to any individual, company, corporation or association." * * *

Nobody would contend that, under this provision, the legislature might not authorize a valid loan of the Commonwealth's credit, either to meet an existing debt or to provide for any legitimate and proper legislative or governmental expense.

Is it not equally certain that, in the same way, the legislature may provide for the expenses incurred within the several counties of the state, "for the support, out of the county treasury, of the sick and injured poor?"

The power of the legislature in this respect was unlimited until the amendment of 1857. That amendment is identical with the 7th section of article 9 of the present constitution, excepting only the introduction, in the latter, of the words "or appropriate," after the word "obtain," and the substitution of the word "individual" for the word "party," and the omission of the words "by virtue of a vote of its citizens or otherwise."

Under this clause, as it then stood, in the great case of Speer *v.* School Directors, &c., of Blairsville, 14 Wright 150, the distinction was clearly pointed out in the opinion of the present chief justice, between the apparent and broad sense of the words and their real and necessarily restricted meaning : "The prohibition of the clause is clearly not against obtaining money for individuals in the sense of those appropriations which involve the public interests; otherwise this would overthrow the whole power to borrow money to perform ordinary municipal functions. The true question is whether the money is borrowed for a public purpose, and paid bonâ fide to a proper person for this purpose, or whether it is money obtained as a loan or advance to the use in all respects of private parties."

[Wilkesbarre City Hospital v. County of Luzerne.]

In Hilbish v. Catherman, 14 P. F. Smith 154, this principle was affirmed. See also Wheeler v. City of Philadelphia, 27 P. F. Smith 338; Weister v. Hade, 2 Id. 474; Booth v. Town of Woodbury, 5 Am. Law Reg. N. S. 202.

Is the use for which the money is appropriated a public one, for a purpose within the proper operation of municipal authority? is the proper question here.

*George B. Kulp*, for defendant in error.—The vice of the act is that it transfers the care of the sick and injured poor from the officers of the municipality, properly chargeable therewith, to a private corporation in no way responsible to or under the control of the county. Speer v. School Directors, *supra*, supports this contention.

Neither the language nor the principle of Wheeler v. Philadelphia, *supra*, warrant the application given to it here.

Chief Justice AGNEW delivered the opinion of the court, March 19th 1877.

The seventh section of the ninth article of the new constitution of 1874, declares that "The General Assembly shall not authorize any county, city, borough, township or incorporated district to become a stockholder in any company, association, institution or corporation; or to obtain or appropriate money for, or to loan its credit to any corporation, association, institution or individual." This section is a substantial re-enactment of the seventh section of the amendments to the constitution of 1857. The latter clause of the amendment of 1857 omitted the word "appropriate." The convention of 1873 inserted this word to give the clause a wider effect. In the case of Speer v. The School Directors of Blairsville, 14 Wright 150, the amendment of 1857 was thoroughly discussed, and it was held that the words "to obtain money for, or loan its credit to any corporation, association, institution or party" did not apply to raising money on the bonds of the municipality for a public purpose, such as the payment of bounties to relieve the people of the municipality from an impending draft, by lot, into the military service. In such a case, the purpose is payment in discharge of a duty or obligation lying upon the municipality, not a loan or advance for purposes private in their nature, or made in aid of private corporations or parties. It was said there, "There is not a word in the amendment which interdicts the borrowing of money merely, or the pledging of the public credit for municipal purposes, to be laid out by authorized public officers. The purpose was to prevent the money of the people from passing into the control of private irresponsible associations or parties, and from being squandered in undertakings of doubtful propriety, or being liable to be lost through the want of integrity of those engaged in its disburse-

[Wilkesbarre City Hospital *v.* County of Luzerne.]

ment. It intended to confine the municipal expenditures not only to public objects, but to public officers or agents under their direct responsibility to the municipality." This interpretation given to the amendment of 1857 was well known to the members of the convention of 1873, for the subject of bounties was one which engaged the attention of the whole state ; and the decision came home to every borough, city, township and county. The convention did nothing to weaken the force of the amendment of 1857, and on the contrary added to its strength by inserting the word " appropriate," and substituting the word " individual" for " party." The words " obtain money for or loan its credit to" applied only to the use of the liability or the credit of the municipality ; but the insertion of the word " appropriate" expanded the effect of the section, so as to embrace money in the treasury itself. A law enabling a private incorporated hospital to make requisitions upon a county, for the payment of its charges for the support of patients under treatment, even though they be paupers, is an appropriation of money by the county to the corporation and comes within the prohibition of the constitution. It is not a payment of any debt incurred by the county, but is a transfer of the money by operation of the Act of Assembly from the treasury of the county to that of the hospital. The hospital exercises no municipal function, but takes as a private institution by a mere act of appropriation. It is under no obligation to open its doors to municipal inspection or visitation, and cannot be controlled or called to an account for the moneys drawn upon requisition—once paid the money is beyond the control of the county. Thus its expenditures may be lavish, and the public funds are liable to be misdirected or squandered, without check, through extraordinary charges and unfair requisitions.

In Speer *v.* School Directors, *supra*, care was taken to distinguish between those necessary governmental purposes, and that proper official disbursement, which are essential to the welfare of society, and for which municipal liability and credit must often be pledged ; and those purposes, however public in their nature, which are administered by private, and in a legal sense, irresponsible hands. The essential powers of government must not be crippled by a too stringent withholding, while it will not do to endanger the public interests by an extension of pecuniary obligations, which, owing to the hands which expend, may result in financial embarrassment and injury. The constitutional restriction is wise in its purpose and ought to be liberally construed for the protection of the people, and strongly against the inhibited institutions and parties.

Judgment affirmed.

SHARSWOOD and PAXSON, JJ., dissent.