# New York & Pennsylvania Co. *v.* New York Central R. R., Appellant.

*Public Service Commission—Practice—Conclusiveness of decision—Appeals—Rates—Reasonable rates — Discrimination — New schedule of rates—Order of reparation—Limitation—Res adjudicata—Rehearing—Findings of fact—Evidence—Prima facie—Rebuttable presumption—Statute of limitations.*

1. The decision of the public service commission on the question as to what is a reasonable rate, and of all matters leading up

thereto or necessarily involved therein, is conclusive if not appealed from; and, if an appeal is taken, the decision of the Superior Court thereon is conclusive.

2. It would be improper to grant an order of reparation on the hearing of objections to a proposed new schedule of rates. This question does not arise until after the reasonableness of the rate has been finally determined, either by a decision of the public service commission unappealed from, or by the Superior Court on appeal.

3. On a petition for an order of reparation all questions decided, or which might have been raised and decided, on the hearing of objections to the schedule of rates, must be considered as having been finally concluded thereby.

4. A petition for rehearing covers only those things which were or should have been decided in the matters regarding which a rehearing is asked.

5. The time within which a hearing must be applied for, does not furnish a statute of limitations for an order of reparation.

6. An order of reparation made by the public service commission is prima facie evidence of the facts stated therein and of the amount due by defendant company to plaintiff, and hence a finding of fact based thereon will not be reversed by the Supreme Court.

7. At a trial, following an order of reparation which has not been complied with, defendant may offer any evidence which he might have offered before the public service commission on the hearing of the petition for the order, the decision of the commission being only prima facie evidence of the facts found and the amount due.

8. Suits to recover for discrimination and those to recover for unreasonableness of rates, are essentially different. In the former the rate actually charged may have been reasonable although other shippers were charged less. In the latter the valid rate on file conclusively determines the question of reasonableness and hence measures the amount of plaintiff's proximate loss.

*Pleading—Statement of claim—Amendment—Striking off statement—Delay—Waiver—Act of May 14, 1915, P. L. 483.*

9. An amendment changing the form of action may be made at any stage of the proceedings.

10. A statement of claim may be amended so as to conform to the case tried, even after a preliminary decision by the court, if the amendment does not change the cause of action.

11. Where a statement of claim is defective in averring the evidence of a cause of action rather than the cause itself, defendant's

remedy is to move to strike it off under section 21 of the Act of May 14, 1915, P. L. 483, and a failure so to do must be deemed a waiver of the defect and cannot be asserted after a trial of the case.

*Constitution — Federal and State — Right of trial by jury — Waiver—Estoppel—Due process—Equal protection—Public Service Company Law—Trial without jury—Acts of April 22, 1874, P. L. 110; July 26, 1913, P. L. 1374.*

12. The public service company law does not deprive defendant of the right of trial by jury, or of the due process of law, or of the equal protection of the laws.

13. An agreement to a trial by the court without a jury under the Act of April 22, 1874, P. L. 110, being a waiver of the right to trial by jury, estops a party from claiming he was denied the right to such a trial.

*Appeals—Practice—Statement of questions involved—Waiver— Case tried by court without jury—Supported by evidence—Question not raised below.*

14. On appeals from a case tried by the court without a jury, the Supreme Court will not reverse findings of fact which have evidence to support them.

15. No question will be considered on appeal save such as are set forth in or suggested by the statement of the question involved; all other matters are deemed waived.

16. A question not raised in the court below will not be considered on appeal.

Argued March 15, 1920. Appeal, No. 154, Jan. T., 1920, by defendant, from judgment of C. P. Clinton Co., July T., 1918, No. 66, for plaintiff on case tried by the court without a jury in suit of New York & Pennsylvania Co. v. New York Central Railroad Co. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Assumpsit to recover amount awarded under an order of reparation of the Public Service Commission.

The case was tried by McCORMICK, P. J., without a jury under an agreement of counsel.

The facts appear by the opinion of the Supreme Court.

The court entered judgment for plaintiff for $9,997.57. Defendant appealed.

*Errors assigned* were various findings and rulings of the trial judge.

*John M. Sternhagen,* of the New York bar, and *James P. O'Laughlin,* with them *McCormick & Hipple, H. S. Furst* and *Edward T. Kelley,* for appellant.—Plaintiff apparently proceeded on the theory that the award of the commission had the legal effect of a judgment and that, having pleaded and established the award, its cause of action was completely proved. This is contrary to the statute upon which plaintiff proceeded: Parsons v. C. & N. W. Ry., 167 U. S. 447; Naylor v. Lehigh Val. R. R., 188 Fed. 860; Meeker v. Lehigh Val. R. R., 236 U. S. 412.

The judgment in the court below was not supported by proper evidence because the order of the public service commission, upon which it is principally based, was not a lawful order: Michigan Cent. R. R. v. Elliott, 256 Fed. 18; Atchison, T. & S. F. Ry. v. Spiller, 246 Fed. 1; Parsons v. C. & N. W. Ry., 167 U. S. 447; Penna. R. R. v. International Coal M. Co., 230 U. S. 184; Meeker & Co. v. Lehigh Valley R. R., 236 U. S. 412; Mills v. Lehigh Valley R. R., 238 U. S. 473.

The order of the commission was unlawful because it was based upon a petition of complainant which was barred by the limitation provision of article VI, section 14, of the Public Service Company Law, and was also res adjudicata: Raisig v. Graf, 17 Pa. Superior Ct. 509; Beloit v. Morgan, 74 U. S. 619; Corry City v. Corry Chair Co., 18 Pa. Superior Ct. 271; Baer Bros. Mercantile Co. v. D. & R. G. R. R., 233 U. S. 479.

The court below erred in permitting plaintiff, after trial and findings in its favor, to amend its statement of claim by adding new and material allegations: Naylor

v. Lehigh Val. R. R., 188 Fed. 860; Joynes v. Penna.
R. R., 234 Pa. 321; Knapp v. Hartung, 73 Pa. 290.

*Thomas R. White,* with him *E. Bartram Richards* and
*B. F. Beary,* for appellee.—The amendment of the state-
ment was properly allowed: Meeker v. Lehigh Valley
R. R., 236 U. S. 412; Danzeisen's App., 73 Pa. 65; Sha-
mokin Val. & Pottsville R. R. v. Malone, 85 Pa. 25;
Joynes v. Penna. R. R., 234 Pa. 321.

The statement of claim as originally filed sufficiently
averred the unreasonableness of the rates and damage
suffered by plaintiff, even upon appellant's theory of the
nature of the case: Ben Avon Boro. v. Ohio Val. Water
Co., 260 Pa. 310.

Appellant's theory of the nature of the case is erron-
eous; in a suit under the Pennsylvania statute to re-
cover the amount of a reparation order, the question of
reasonableness of rates is no longer in issue: Southern
Pac. Co. v. Darnell-Taenzer Lumber Co., 245 U. S. 531;
Ben Avon Borough v. Ohio Val. Water Co., 260 Pa. 310.

OPINION BY MR. JUSTICE SIMPSON, April 12, 1920:
The facts in this case are undisputed, and the legal
questions involved, nearly all of which depend upon a
proper construction of the Public Service Company Law
of July 26, 1913, P. L. 1374, are not difficult of solution
to those whose only anxiety is that its beneficent pro-
visions shall be wisely administered for the benefit alike
of the carrier, the shipper and the public.

The transportation of coal from the Munson and
Hawk Run Mining Districts to Lock Haven, all in this
State, is by the railroad of defendant to Bald Eagle
Junction, and thereafter by that of the Pennsylvania
Railroad Company; each carrier having charge and
control of the cars during their passage over its line, and
each having filed with the public service commission a
rate for its service, defendant's being called a propor-
tional rate, and that of the Pennsylvania Railroad Com-

pany a local rate, the sum of the two making a
through rate, though not filed as such. At the time the
shipment began, defendant collected this through rate,
and afterwards remitted to the Pennsylvania Railroad
Company its proportion thereof.

A short time prior to September 20, 1916, and appar-
ently for the purpose of taking advantage of the fact that
the Pennsylvania Railroad Company had reduced its
rate, defendant filed a new schedule increasing its rate
between the points named, to become effective on
that date; before which time a number of interested
parties filed with the commission complaints there-
against. Pending the hearing of these complaints, and
during the period after said effective date, plaintiff, as
required by law, paid defendant at the increased rate,
being entitled to demand reparation if ultimately it
should be decided to be unreasonable.

At the hearing by the commission, defendant raised
three objections to the complaints: (1) That they were
not in proper form. This was overruled. (2) That,
since the complaints were regarding a joint rate,
though "made up of two separately established locals or
proportionals," the Pennsylvania Railroad Company
should also have been made a party to the proceedings.
Upon this point the commission said: "The [local] por-
tion of this through rate imposed by the Pennsylvania
is not questioned by either the complainants or the re-
spondents"; and again: "It is practically conceded by
both respondent and complainant that the Pennsylvania
local rate is reasonable......To compel the Pennsyl-
vania Railroad Company to appear would be of no par-
ticular purpose......Whenever a through rate is ad-
judged unreasonable, and it is made up of separately
imposed proportionals or locals, it may be reduced to a
reasonable rate by an order directed against the pro-
portional or local found to be unjust or unreasonable,"
citing Interior Iowa Cities Case, 28 I. C. C. 64. It there-
fore decided "The through rates complained against

......are for the reasons above stated held to be unjust and unreasonable,......[and hence] an order will be issued directing the respondent to strike from its tariff the increased locals or proportionals which are the subject of this complaint,......and to restore the rates of respondent in effect immediately prior thereto." A rehearing asked for by defendant was refused, an order made in accordance with this ruling, and from it defendant did not appeal. No order of reparation was then made because the machinery of the law, so far as it relates to this branch of the investigation, looks only to an inquiry into the reasonableness of the rates objected to, and hence, as will hereinafter be pointed out, the statute requires reparation to be applied for, and granted or refused in a later proceeding.

Defendant not having refunded to plaintiff the amount paid in excess of the reasonable rate as thus determined, plaintiff filed with the commission a petition setting forth the foregoing facts and the damages it had suffered, and asked for an order of reparation. Defendant attempted to re-raise the question decided in the first proceeding, but this it could not then or thereafter do, not because the facts and law there laid down were res adjudicata in the usual acceptation of that term, but because, by article VI, section 31, of the act, defendant's failure to appeal made all those rulings "conclusive upon all parties affected thereby." Hence, as between these parties, it was conclusively determined the complaints were in form sufficient to comply with the statute, the Pennsylvania Railroad Company was not a necessary party to the proceedings, and defendant's proposed new rates were unreasonable. Had an appeal been taken, most of the matters now complained of would have been considered and determined by the Superior Court, for section 24 of the same article requires it then to decide whether or not "the order appealed from is unreasonable or based upon incompetent evidence materially affecting the determination or order of

the commission, or is otherwise not in conformity with law."

Defendant also alleged that, since plaintiff in its original complaint against the new rates had given notice it intended to claim reparation, the commission had not made an award, and plaintiff had not asked for a rehearing, the matter thereby became res adjudicata. This contention, however, overlooks article V, section 5, which provides that "If, after hearing, upon complaint ......the commission shall determine that any rates which have been collected......by any public service company complained of, were......unjust and unreasonable......the commission shall, upon petition, have the power and authority to make an order for reparation, awarding......the amount of damages sustained in consequence of said unjust, unreasonable or unlawful collections." This plainly requires the petition for reparation to be filed after the final decision on the question of the reasonableness of the rates. The rehearing referred to in article VI, section 14, is one regarding which a decision has already been made, and not, in the present instance, to the question of reparation, which had not been determined when it is alleged the rehearing should have been asked, and the limitation regarding which, as a new proceeding, is that set forth in article V, section 5, viz: "within two years from the time when the cause of action accrued." Appellant's contention in effect is that, because plaintiff asked too soon for an order of reparation, and did not ask for a rehearing, which could only have resulted in another statement that the request was premature, therefore the fifteen days' limitation, which applies only to applications for a rehearing, effectually defeats the petition when made at the right time and in the right way. The fallacy of this is made all the more manifest when it is remembered the first complaint was made before the effective date of the new schedule, and hence before any collections for which reparation could be ordered; and also, until after

the case was finally determined, perhaps years later on appeal, the extent of the excess payments could not be fully known. If it be asked why the legislature required the two proceedings to be kept separate, this record furnishes the answer. Many parties were interested in having the rate determined to be unreasonable, some of whom, being public bodies and not shippers, intervening on behalf of the public generally, never could get reparation. • Each claimant was alone interested in the reparation to be made to him. To hear both matters together would tend to confusion and not to orderly procedure; would impose upon every party thereto, including defendant, much unnecessary delay and expense; would, if jury trials were permitted on the question of the reasonableness of rates, perhaps result in different rates being held reasonable by different juries; and would be founded on the thought that every carrier, though knowing from its own books the extent of its liability, would not refund when the unreasonableness of its rate had been finally determined.

Testimony on the question of reparation was taken by the commission, and, in its report, after deciding the foregoing matters and reciting that its prior finding "determined that the rates of the respondent company . . . . . were unjust and unreasonable," it made an order, based also on the other facts then found, directing defendant to pay to plaintiff "within fifteen days from the date of service of this order. . . . . .the sum of $9,245.29, being the amount of damages sustained by said last mentioned company, in consequence of the unjust and unreasonable collections" made by defendant from plaintiff.

Defendant having received a copy of the order, and not having made payment within the time specified, plaintiff brought the present suit, defendant filed affidavits of defense thereto, the parties agreed the case might be tried by the court without a jury, testimony was taken and the trial judge filed his opinion, finding in

favor of plaintiff, and stating, inter alia: "The increased rates charged by the defendant railroad company, as set forth in paragraphs five and six, were in fact unjust and unreasonable to the extent of ten cents and twenty cents per gross ton respectively, during the periods aforesaid"; and also "Plaintiff company has suffered damage by reason of the increased charges above referred to, between the dates of September 20, 1916, and August 24, 1917, in the sum of $9,245.29, as of May 6, 1918, and has suffered damage since that date to the present time in the amount of $508.49, being the legal interest on the sum above mentioned." To these and the other findings of the court below exceptions were filed by defendant, which were dismissed, judgment entered and this appeal taken.

There are fifty-seven assignments of error, which will not be considered separately because, by the rules of this court, all the matters which appellant wishes to be decided must be set forth in or suggested by the statement of the questions involved (Willock v. Beaver Valley R. R., 229 Pa. 526; Smith v. Lehigh Valley R. R., 232 Pa. 456; Duncan v. Duncan (No. 2), 265 Pa. 471), all others being waived; and hence we turn to those questions and will consider them in the order stated by appellants. We do this all the more gladly because in a number of instances one assignment is but an immaterial modification of others, a prolonged investigation of which would therefore tend only to cloud the real issue.

The first of the questions stated to be involved is: "Right of action on reparation order of the public service commission without alleging or proving damage or that rates were unreasonable or unlawful." It will be seen that this question really involves two separate inquiries, one regarding the averment and the other the proof of the matters stated. As the second of the questions involved, hereinafter to be considered, practically admits that the first of these inquiries is answered antagonistically to appellant, if the amendment to the

statement of claim was properly allowed, we will leave this question to be considered under the second head, and will now decide only whether or not there was evidence before the court below from which the above findings could have been made; always keeping in mind the rule that, on reviewing facts found by the court in cases tried without a jury, we are limited to ascertaining whether or not there was evidence to support the findings, and cannot reverse if there was: Jamison v. Collins, 83 Pa. 359; Griffith v. Sitgreaves, 90 Pa. 161; Rohrheimer v. Hofman, 103 Pa. 409; Brown v. Susquehanna Boom Co., 109 Pa. 57; Com. v. Hulings, 129 Pa. 317; Com. v. Westinghouse Electric and Manufacturing Company, 151 Pa. 265; Com. v. Ontario, Carbondale and Scranton Ry. Co., 188 Pa. 205. This conclusion is the same as the provision in section 649 of the revised statutes of the United States, under which "nothing is open to review......except the rulings of the court in the progress of the trial......[and these] do not include the general finding of the circuit court, nor the conclusions of the circuit court embodied in such general finding": Town of Ohio v. Marcy, 85 U. S. 552; Town of Martinton v. Fairbanks, 112 U. S. 670. In the present case no assignment of error challenges any ruling of the court below as to the admission or rejection of evidence, which, therefore, must all be taken as true, and the legal effect thereof alone considered.

Article V, section 5, of the act provides that, where suit is brought because a reparation order has not been complied with, "said order......shall be prima facie evidence of the facts therein stated and that the amount awarded is justly due the plaintiff in such suit, and the defendant public service company shall not be permitted to avail itself of the defense that the service was, in fact, rendered to the plaintiff at the rate contained in its tariffs or schedules in force at the time payment was made and received." So far as we are at present concerned, this provision is the same as that contained in the Interstate

Commerce Act, viz: "that on a trial of such suit [following an award] the findings and order of the commission shall be prima facie evidence of the facts therein stated." In Meeker v. Lehigh Valley R. R., 236 U. S. 412, such a suit was brought; at the trial, just as in the present case, "plaintiff produced no evidence tending to show unjust discrimination, exaction of unreasonable rates, or injury to Meeker & Company, or what damages were sustained by them, other than the evidence afforded by the reports and orders of the commission," and the defendant also produced no evidence; whereupon the trial judge charged the jury, "If you take the evidence which is made prima facie by the Act of Congress as conclusive of the claim, it will be your duty to render a verdict for the plaintiff for the full amount." A verdict was rendered accordingly, and the Supreme Court of the United States in affirming it (less a counsel fee held to be improperly allowed), said: "This provision [as to prima facie evidence] only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury, or take away any of its incidents. Nor does it in anywise work a denial of due process of law." Hence, in the present case, the court below was justified in considering the order of reparation as evidence and in founding its judgment thereon, and, under the authorities above cited, we cannot review its conclusion on this point.

The second question involved is: "May trial court, after trial and decision on reparation order on statement of claim framed as above, allow amendment of same by averments of unreasonableness, unlawfulness and damage?" The original statement of claim set forth the proceedings before and order of the commission finding that "the increased charges complained of by plaintiff were unreasonable," the order of reparation, its service,

and the failure to pay, and claimed the amount thereof. This it is suggested was only averring the prima facie evidence of the claim rather than the claim itself, and hence violated section 5 of the Practice Act of May 14, 1915, P. L. 483; but, assuming this to be true, defendant's remedy was to move to strike off the statement for this reason, as provided by section 21 of the act. This it did not do, though it made such a motion for other reasons, and hence cannot now be heard to complain on this ground. Indeed the question seems to have been raised for the first time in defendant's requests for conclusions of law presented after the closing of the evidence. It was then too late; but plaintiff, before the exceptions were decided or final judgment entered, obtained a rule to show cause why the statement should not be so amended as to remove the objections. This rule was made absolute, and the amendment made, and the only objection now suggested is that it should not have been allowed after the evidence was closed and the findings filed. No reason is given for this claim, nor authority cited therefor, and it is contrary to all our decisions. Appellant admitted at bar it did not change the cause of action, as in fact it did not, and hence an amendment may be allowed at any time, even after final judgment below and an appeal to this court, especially where, as here, no question of the statute of limitations is involved: Wampler v. Shissler, 1 W. & S. 365; Downing v. Lindsay, 2 Pa. 382; Feig v. Meyers, 102 Pa. 10; Adams v. Edwards, 115 Pa. 211; Holmes v. Penna. R. R. Co., 220 Pa. 189; Joynes v. Penna. R. R. Co., 234 Pa. 321. Had defendant averred a wish to produce other evidence because of the amendment, doubtless it would have been allowed to do so, but neither in answer to the rule to show cause, nor at any other time, did it state it had other evidence to produce.

It is now alleged also that the effect of the amendment is to change the form of action from assumpsit to tort, though it was summoned to answer an action of assump-

sit. Assuming this to be so, it does not help appellant (a) because even if such a variance existed it is of no moment in this State: Sipe v. Pennsylvania R. R., 219 Pa. 210; (b) because no such question was raised in the court below; (c) because by the Act of May 10, 1871, P. L. 265, an amendment of the form of action may be made "in any stage of the proceedings"; and (d) because it is not within the statement of the questions involved and hence under our rules must be deemed waived.

The third question stated to be involved is: "Was commission's award invalid when (a) based on a rate of another carrier, not in issue, and on proceedings barred by fifteen-day limitation, (b) without finding of unreasonableness of defendant's rate, (c) not justified by the evidence?" What has been said answers all these questions. So far as they attempt to raise the points decided in the first report and order of the commission, we have already shown the matters are now concluded by the failure to appeal therefrom. So far as they relate to the second report, every new matter decided thereby was open for review on this trial, had appellant chosen to produce evidence to rebut the prima facies of the findings. So far as they relate to the fifteen days' limitation, as already stated the claim has no foundation in the statute.

The final question involved is: "Were proceedings in violation of the Constitutions of Pennsylvania and of the United States?" It is not apparent whether this is intended to refer to the inquiry as to the reasonableness of the rate, or to the application for an order of reparation, or to the trial in the court below, or to all three; but under it appellant alleges it was deprived of the right of trial by jury guaranteed by article I, section 6 of the Constitution of this State, and the 7th amendment to the Constitution of the United States, and of the due process of law and equal protection of the law's provisions in the 5th and 14th amendments of the Consti-

tution of the United States. As the 5th amendment is a limitation upon the powers of the United States and not of the states (Barron v. The Mayor and City Council of Baltimore, 7 Peters 243; State of Ohio ex rel. v. Dollison, 194 U. S. 445), it may be dismissed from further consideration. The foregoing quotation from Meeker v. Lehigh Valley R. R., 236 U. S. 412, disposes of the claim that appellant was deprived of a right of trial by jury and of due process of law. It sounds a little strange, moreover, to hear a party complain because it did not have a trial by jury, when it agreed to a trial by the court without a jury, under a statute which provided that "an agreement to submit under this act shall be a waiver of the right of trial by jury" (Section 4, Act of April 22, 1874, P. L. 110), especially as it is not a trial by jury, but only the right of trial by jury which is guaranteed by the Constitution: The Bank of Columbia v. Okely, 4 Wheaton 235, 244; Capital Traction Co. v. Hof, 174 U. S. 1.

So far as the equal protection of the laws is concerned, this only requires that all those in a similar situation shall be treated alike (Walston v. Nevin, 128 U. S. 578; Field v. Barber Asphalt Paving Co., 194 U. S. 618); does not affect the rights of the states under the police power (Barbier v. Connelly, 113 U. S. 27; New York and New England R. R. v. Town of Bristol, 151 U. S. 556); which may, therefore, regulate the rates to be charged by common carriers (County of Stanislaus v. San Joaquin & King's River Canal and Irrigation Co., 192 U. S. 201; Grand Rapids & Indiana Ry. Co. v. Osborn, 193 U. S. 17); may commit the matter to a commission to hear and determine (Railroad Commission Cases, 116 U. S. 307; Louisville & Nashville R. R. Co. v. Com. of Kentucky, 183 U. S. 503), all proceedings before which, and in the state courts, will be governed by the state practice and procedure (Iowa Central Ry. Co. v. State of Iowa, 160 U. S. 389; Hooker v. City of Los Angeles, 188 U. S. 314); including any

statutory provision shifting the burden of proof, and making a finding of fact based thereon conclusive: Minneapolis & St. Louis R. R. Co. v. State of Minnesota ex rel. Railroad & Warehouse Commission, 193 U. S. 53.

The application of the foregoing principles to the present case demonstrates that the conclusions reached are correct, but at the risk of prolixity they will be restated here. The rate in force prior to September 20, 1916, was the only rate under which collections could be made until changed in the manner prescribed by law. When defendant undertook to change it, objections were made thereto before the effective date specified in the new schedule, and this put upon appellant the burden of proof of the propriety of the change. The commission was of opinion it did not carry this burden, decided the rate to be unreasonable, and that the technical objections to the proceedings were invalid. From this decision defendant had the right to appeal, but not having done so the findings became conclusive. Plaintiff then petitioned for an order of reparation, which was duly made. It is immaterial upon what evidence the commission fixed the sum named in the order, for in a suit to recover the amount thereof, defendant could offer evidence to reduce or wholly defeat it; the only effect, and that a valid one, being that the sum named was prima facie correct. It is difficult to understand in this case how the commission could have fixed any other sum, since defendant could collect only at the rate specified in the schedules on file and valid, either because no objections were made thereto or if made the rate was sustained by the commission, and hence in determining the new rates to be unreasonable, with no other rate advanced by appellant, it necessarily determined also that the prior rate was the only valid one, and that the excess collection under the new was improperly retained by defendant and hence measured plaintiff's damages. When suit was brought, instead of offering countervailing evidence, defendant chose to stand on the record and

orders of the commission, and the court below, upon this evidence, made so by the statute, found as facts that the rate charged was unreasonable and plaintiff was damaged in the sum named in the order of reparation; and, if we assume the court could inquire into the reasonableness of the rate, it would not aid appellant, for there was sufficient evidence to sustain the findings actually made, and for that reason we cannot review them. Moreover, the ascertainment of this sum was a matter of pure arithmetic, with the basic accounts and calculations alike unchallenged, and with no suggestion of the existence of any other data which could or should be substituted therefor. Indeed the shipments and excess payments were expressly admitted at the trial, and, as shown above, the unreasonableness of the rate was conclusively determined in the first proceeding before the commission.

It must not be overlooked that this is not a case of discrimination, where one shipper has been charged a higher rate than another, in which event the measure of damages may not, as a matter of law, be the difference between the two rates, because the higher rate may have been that set forth in an approved tariff filed with the commission, or, where no schedule of rates existed, may have been a reasonable rate; but is a case wherein it has been conclusively determined the carrier holds money it should not have exacted from the shipper, and where, therefore, the least the law can do is to compel its return; for, as was said in considering this same distinction, "here the plaintiffs have paid cash out of pocket that should not have been required of them, and there is no question as to the amount of the proximate loss": Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U. S. 531, 535.

The judgment of the court below is affirmed.